1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JEANNA RUBIO,                          )   Case No. SACV 09-420-OP
                                       )
                Plaintiff,             )
                                       )
        v.                             )   MEMORANDUM OPINION; ORDER
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
                Defendant.             )
                                       )

        The Court[1] now rules as follows with respect to the disputed

issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

        [1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
the United States Magistrate Judge in the current action.  (See Dkt. Nos. 7, 9.)

        [2]  As the Court advised the parties in its Case Management Order, the
decision in this case is being made on the basis of the pleadings, the
Administrative Record, and the Joint Stipulation filed by the parties.  In
accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has
determined which party is entitled to judgment under the standards set forth in 42
U.S.C. § 405(g).

1

## I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1.      Whether the Administrative Law Judge ("ALJ") properly considered the treating physician's opinion;[3]

2.      Whether the ALJ considered the severity of Plaintiff's mental impairment;

3.      Whether the ALJ properly considered the type, dosage, and side effects of Plaintiff's medications;

4.      Whether the ALJ considered the mental and physical demands of Plaintiff's past relevant work;

5.      Whether the ALJ properly considered the lay witness testimony; and

6.      Whether the ALJ posed a complete hypothetical to the vocational expert ("VE").

(JS at 2-3.)

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

---

[3] Plaintiff misidentifies the physician in claim one as a consultative examiner. (JS at 2-4; Administrative Record ("AR") at 65.)

1  to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted).  The

2  Court must review the record as a whole and consider adverse as well as

3  supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).

4  Where evidence is susceptible of more than one rational interpretation, the

5  Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450,

6  1452 (9th Cir. 1984).

7                                    **III.**

8                              **DISCUSSION**

9  **A.    The ALJ Properly Considered Plaintiff's Mental Impairment.**

10        Plaintiff contends the ALJ erred by failing to provide "legally sufficient"

11  reasons for rejecting the April 4, 2001, opinion of Dr. Raymond Casciari regarding

12  Plaintiff's mental impairments.  (JS at 3-4.)  The Court disagrees.

13        **1.    Relevant Time Period.**

14        As a preliminary matter, Plaintiff's prior application for disability insurance

15  benefits was denied on May 29, 2002.  (AR at 60-68.)  On March 15, 2005,

16  Plaintiff filed a second application for supplemental security income and disability

17  insurance benefits, alleging a disability onset date of May 29, 2002. (Id. at 16,

18  119-F.)  The ALJ indicated that the relevant time period for consideration for

19  supplemental security income is from May 30, 2002,[4] through the date of the

20  decision, June 12, 2007.  (Id. at 16, 24.)  As to Plaintiff's claim for disability

21  insurance benefits, the ALJ stated that Plaintiff must establish disability from May

22  30, 2002, through March 31, 2005.[5]  (Id. at 16.)

23        **2.    Background.**

24        On April 4, 2001, Dr. Casciari completed a mental assessment for Plaintiff.

25

26        [4] Plaintiff does not contest May 30, 2002, as the first day of the relevant
   time period for the current application.

27

28        [5] Plaintiff also does not contest the relevant time period for supplemental
   security income or for disability insurance benefits.

1  (Id. at 446-49.)  Dr. Casciari concluded that Plaintiff is markedly limited in the

2  following areas:  (i) the ability to understand and remember detailed instructions;

3  and (ii) the ability to complete a normal workday and workweek without

4  interruptions from psychologically-based symptoms and perform at a consistent

5  pace without an unreasonable number and length of rest periods.  (Id. at 446-47.)

6  Dr. Casciari also found Plaintiff to be slightly to moderately limited in a number of

7  areas, including the broad categories of:  (i) understanding and memory; (ii)

8  sustained concentration and persistence; (iii) social interaction; and (iv)

9  adaptation.  (Id. at 446-48.)

10      In the prior May 2002 decision, the previous ALJ rejected Dr. Casciari's

11  opinion as to Plaintiff's mental impairments.  (Id. at 65-66.)  The ALJ provided:

12      Dr. Casciari has also submitted a mental functional assessment,

13      reflecting considerably greater restrictions than a residual functional

14      capacity as found herein.  Aside from the claimant's self statements,

15      there is no indication in the records that any detailed mental status

16      examination was completed as would offer a basis for his assessed

17      restrictions, or that this physician in fact specializes in mental health

18      treatment.   In contrast, the consultative psychologist, Dr. Krieg,

19      completed not only a mental status examination, but also administered

20      a number of psychological tests in formulating the claimant's mental

21      functional capacity. Accordingly, the Administrative Law Judge assigns

22      the greater weight to the opinions of Dr. Krieg and the State Agency

23      medical consultants than to that offered by Dr. Casciari.

24  (Id. at 66.)  The ALJ, then adopted the following mental residual functional

25  capacity ("RFC"):

26      From a mental standpoint, the claimant is capable of understanding clear

27      instructions, following directions and completing tasks.  She is able to

28      accept instructions from supervisors and interact with coworkers and the

4

public, and is able to maintain a regular attendance in the workplace. She is able to complete a normal workday or workweek, deal with usual stress in the work place and adjust to changes.

(Id.)

### 3. **Analysis.**

Here, the ALJ adopted the prior finding regarding Plaintiff's mental impairments by stating:

[T]he Administrative Law Judge does adopt the prior findings that the claimant has no mental impairment that would prevent her from performing her past relevant work as a data entry clerk and rural letter clerk.

(AR at 17.)  By adopting the prior finding, the ALJ implicitly rejected the opinion of Dr. Casciari for the reasons stated by the ALJ in the prior decision.  See supra, Discussion Part III.A.2.  However, the ALJ was not required to explicitly address Dr. Casciari's opinion, dated April 4, 2001, because it occurred prior to the relevant time period, commencing on May 30, 2002.  Id. at Part III.A.1.

To the extent that Plaintiff is arguing that the prior decision regarding Dr. Casciari's opinion was improper, Plaintiff is precluded from doing so by the doctrine of res judicata.[6]  Under the doctrine of res judicata, the prior, final determination of non-disability bars re-litigation of Plaintiff's disability claim through the date of the prior decision.  See Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995) (An ALJ may apply "res judicata to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior matter."); see also Brawner v. Sec'y of Health & Human Servs., 839 F.2d

_____

[6]  Although applied less rigidly to administrative than to judicial proceedings, the principles of res judicata do apply to administrative decisions. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988); Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988).

1  432, 433 (9th Cir. 1987) ("Brawner did not appeal, and that decision precludes
2  him from arguing that he was disabled as of that date."). Thus, Plaintiff is barred
3  from re-litigating her previous disability claim here.

4       Assuming that the current ALJ erred in rejecting Dr. Casciari's opinion, any
5  error would be harmless. Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991)
6  (harmless error rule applies to review of administrative decisions regarding
7  disability). As stated above, the current ALJ implicitly rejected Dr. Casciari's
8  opinion in adopting the previous ALJ's mental RFC assessment. (AR at 17, 65-
9  66.) In the prior decision, the previous ALJ provided specific and legitimate
10  reasons, supported by substantial evidence, to reject Dr. Cascari's opinion. (Id. at
11  66); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). First, Dr.
12  Casciari's opinion was based on Plaintiff's subjective complaints, which the
13  previous ALJ properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169
14  F.3d 595, 602 (9th Cir. 1999) (A treating physician's opinion based on the
15  plaintiff's own complaints may be disregarded if the plaintiff's complaints have
16  been properly discounted); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th
17  Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Next, the
18  previous ALJ noted that Dr. Casciari's opinion was not supported with any
19  explanation or clinical findings for the assessed mental restrictions. Thomas, 278
20  F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a
21  treating physician, if that opinion is brief, conclusory, and inadequately supported
22  by clinical findings."); see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016,
23  1019 (9th Cir. 1992). Finally, the previous ALJ relied on findings by other
24  physicians, based on independent clinical finding, to reject Dr. Casciari's opinion.
25  See Andrews, 53 F.3d at 1041 ("Where the opinion of the claimant's treating
26  physician is contradicted, and the opinion of a nontreating source is based on
27  independent clinical findings that differ from those of the treating physician, the
28  opinion of the nontreating source may itself be substantial evidence; it is then

solely the province of the ALJ to resolve the conflict."). Thus, the previous ALJ properly rejected Dr. Cascari's opinion. (Id. at 66); see also Thomas, 278 F.3d at 957. Accordingly, any error by the current ALJ to reject Dr. Casciari's opinion would be harmless, as it was properly rejected in the prior decision, and substantial evidence supports the current ALJ's mental RFC assessment (see infra, Discussion Part III.B).

Based on the foregoing, the Court finds that Plaintiff is not entitled to remand or reversal based upon the ALJ's alleged failure to properly reject Dr. Casciari's opinion.

**B.**     **The ALJ Did Not Err by Failing to Consider the Severity of Plaintiff's Alleged Mental Impairment.**

Plaintiff contends that the ALJ failed to properly consider the severity of her mental impairment as assessed by Dr. Casciari. (JS at 7-8.) As stated above, while the ALJ was not required to consider Dr. Casciari's opinion, the ALJ implicitly rejected Dr. Casciari's findings. See supra, Discussion Part III.A. Thus, the Court finds that the ALJ did not err by failing to consider the severity of Plaintiff's alleged mental impairment as assessed by Dr. Casciari.

To the extent Plaintiff is arguing that the ALJ failed to properly consider the severity of her mental impairment generally, her claim is also without merit. Here, the ALJ considered the opinion of consultative physician, Dr. Nathan Lavid. (AR at 22.) On June 3, 2005, Dr. Lavid performed a psychiatric consultative examination and assessed Plaintiff's functional limitations as follows:

> The mental status examination today revealed the patient had [a] number of complaints of depression, but was otherwise without evidence of gross cognitive deficits and delusional disorders at this time. The patient was fairly groomed, and seems capable of taking care of her own needs.

This patient is able to focus attention adequately. She is able to follow one and two part instructions. The patient can adequately remember and complete simple tasks. While the patient does report a number of depressive complaints, she is receiving medication and psychotherapy for her depression, and reports partial response to treatment. In addition, the patient performed reasonably well during the mental status examination today. As such I believe that in her current mental state, she does have the ability to tolerate the stress inherent in the work environment and maintain regular attendance. Considering the patient states she has intermittent emotional disturbances, I believe she would benefit initially from supervision at the workplace.

(Id. at 797-801.)

On July 20, 2005, Dr. Paul Balson completed a "Psychiatric Review Technique" form. (Id. at 802-17.) Dr. Balson assessed Plaintiff to have a non-severe impairments of depressive disorder, not otherwise specified. (Id. at 802.) Dr. Balson opined that while Plaintiff had a mild limitation in maintaining concentration, persistence, or pace, but her memory, concentration, attention, insight, and judgment were all normal. (Id. at 812, 816.) He also indicated that Plaintiff was able to follow instructions. (Id. at 816.)

In the decision, the ALJ gave considerable weight to the opinions of Drs. Lavid and Balson. (Id. at 23.) The ALJ stated:

The Administrative Law Judge gives significant weight to the assessment of the consultative psychiatrist [Dr. Lavid] . . . in which the claimant is found to have no psychiatric symptoms which would impair her ability to perform work activity on a regular and continuing basis. The Administrative Law Judge also gives significant weight to the assessment of [Dr.] Paul Balson . . . who adopted the prior

1    Administrative Law Judge's opinion that the claimant's depressive

2    disorder not otherwise specified is not a "severe" impairment.

3  (Id. (citations omitted).)  The ALJ's RFC assessment is consistent with these

4  opinions.  (AR at 19.)

5    Accordingly, the ALJ considered the relevant medical evidence in assessing

6  the severity of Plaintiff's mental impairment.  Plaintiff fails to provide any

7  evidence during the relevant time period that contradicts the opinions of Drs.

8  Lavid and Balson, nor is the Court able to identify any conflicting evidence.  Thus,

9  the Court finds that the ALJ did not err by failing to consider the severity of

10  Plaintiff's alleged mental impairment generally.

11  **C.    The ALJ Did Not Err in Failing to Consider Plaintiff's Medications and**

12  **Their Side Effects.**

13    Plaintiff contends that the ALJ failed to consider her medication side

14  effects.  (JS at 10-11.)  In her disability application, Plaintiff claimed that she took

15  the following medications and suffered various side effects:  (i) hyper mood or

16  anxiety from Albuterol, Flovent, Proventil, Servent Diskus, and Xanax; (ii) hunger

17  from Amaryl and Protonix; (iii) tiredness from Diovan HCT and

18  Trimethobenzamide; (iv) frequent urination from Furosemide and Spironolactone;

19  (v) diarrhea from Miralax and Zelnorm; (vi) light-headed and dizziness from

20  Nitrolingual, Prochlorperazine, and Propoxy; and (vii) bloating from Prednisone.

21  (AR at 639-40.)

22    Under Ninth Circuit law, the ALJ must "consider *all* factors that might have

23  a 'significant impact on an individual's ability to work.'"  Erickson v. Shalala, 9

24  F.3d 813, 817 (9th Cir. 1993) (quoting Varney v. Sec'y of Health & Human

25  Servs., 846 F.2d 581, 585 (9th Cir.), relief modified, 859 F.2d 1396 (1988)).  Such

26  factors "may include side effects of medications as well as subjective evidence of

27  pain."  Erickson, 9 F.3d at 818.  When the ALJ disregards the claimant's testimony

28

1   as to subjective limitations of side effects, he or she must support that decision
2   with specific findings similar to those required for excess pain testimony, as long
3   as the side effects are in fact associated with the claimant's medications. See
4   Varney, 846 F.2d at 545; see also Muhammed v. Apfel, No. C98-02952-CRB,
5   1999 WL 260974, at *6 (N.D. Cal. 1999). However, medication side effects must
6   be medically documented in order to be considered. See Miller v. Heckler, 770
7   F.2d 845, 849 (9th Cir. 1985).

8       Despite Plaintiff's contentions, the objective medical record does not
9   support the existence of medication side effects. While Plaintiff indicated that she
10  suffers from the various side effects stated above, there is no evidence that she
11  reported any side effects from her medications to her treating physicians or that
12  her treating physicians reported any functional limitations due to her alleged side
13  effects. (See generally AR.) Further, the record is devoid of any instances where
14  Plaintiff complained of medication side effects to her consultative physicians.
15  (Id.) Moreover, Plaintiff fails to cite to any medical evidence demonstrating that
16  the alleged symptoms caused her any functional limitations. See Osenbrock v.
17  Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (Side effects not "severe enough to
18  interfere with [plaintiff's] ability to work" are properly excluded from
19  consideration). At the hearing, Plaintiff provided no testimony that she suffered
20  from any medication side effects or had any functional limitations from the alleged
21  side effects. (AR at 80-93.) The only evidence regarding these alleged side
22  effects consists of Plaintiff's own statements to the Administration in her disability
23  application. Notably, the ALJ found Plaintiff to not be credible regarding her
24  subjective symptoms.[7] (Id. at 21-23.) Thus, there was no reason for the ALJ to
25  consider any potential side effects.

26      Based on the foregoing, the Court finds that the ALJ did not err by failing to
27  
28      [7] Plaintiff does not dispute the ALJ's credibility finding.

10

1  consider the side effects of Plaintiff's medications.

2  **D.    The ALJ's Error in Determining Plaintiff Could Perform Her Past**
3        **Relevant Work Was Harmless.**

4        Plaintiff argues that the ALJ's determination that Plaintiff was capable of
5  performing her past relevant work as a sales clerk and receptionist was erroneous
6  because the ALJ failed to properly consider the actual mental and physical
7  demands of her past relevant work.  (JS at 14-16.)

8        **1.    Background.**

9        In her disability application, Plaintiff reported that she had worked, inter
10  alia, as a sales associate/clerk and receptionist.  (AR at 134-41, 634-35.)  For each
11  position listed in her application, Plaintiff provided the physical requirements, the
12  technical and educational skills, and the actual day-to-day duties.  (Id.)  For
13  example, in her position as a sales associate, Plaintiff described her job duties as
14  selling clothing, working at the cash register, hanging and folding clothes, and
15  unpacking boxes of clothes.  (Id. at 138.)  In an workday, Plaintiff walked and
16  stood for eight hours, with no sitting, climbing, stooping, kneeling, crouching,
17  crawling, and handling big or small objects.  (Id.)  Plaintiff also carried less than
18  ten pounds.  (Id.)  Plaintiff supplemented the descriptions of her past relevant
19  work by providing testimony at the hearing.  (Id. at 81-83.)

20        Also at the hearing, the ALJ engaged in the following dialogue with the
21  vocational expert ("VE"):

22        ALJ:  Could you describe her past relevant work of the last 15 years?
23        VE:    Yes, Your Honor.   She's worked most recently as a
24        cashier/checker, 211.462-014. This typically light work, SVP three. As
25        performed, the work was medium in exertion.  She was also a rural mail
26        carrier, 230.363-010.   This typically medium work, SVP two.   As
27        performed, the work was heavy in exertion.  And in 1996 she worked as

28

1    data entry clerk, 203.582-054.  This is typically sedentary work, SVP

2    four.

3    ALJ:  All right.  Now about the office manager?

4    VE:  That would be part of the office manager job, Your Honor.

5    ALJ:  Okay.  All right.  For purposes of the claimant's past relevant

6    work and potential entry-level work, assume the claimant's 47-years-old

7    with a twelfth grade education; capable of performing medium work

8    with mild pain, which would include the ability to stand or walk six

9    hours out of eight hours; sit six hours out of eight hours; occasionally

10   climb, balance, stoop, kneel, crouch and crawl, and dust; would be

11   mildly limited for understanding and remembering tasks or sustained

12   concentration and persistence, socially interacting with the general

13   public and adapting to workplace changes; and using a regressive mental

14   limitation scale of slight to mild to moderate to marked, could she

15   perform any of her past relevant work?

16   VE:  She could perform any of the past jobs as they're typically performed.

17   (Id. at 97-98.)

18       After the hearing and reviewing the record, the ALJ determined that

19   Plaintiff has the RFC to perform medium work, limited as follows:

20       [Plaintiff can] occasionally climb, balance, stoop, kneel, crouch and

21       crawl; avoid temperature extremes, fumes, odors, dusts, gases and

22       poor ventilation; and perform work that would allow for mild

23       difficulties maintaining social functioning and concentration,

24       persistence and pace.

25   (Id. at 19.)  The ALJ then determined that Plaintiff could perform her past relevant

26   work as a sales clerk and receptionist, as actually and generally performed.  (Id. at

27   23.)  The ALJ relied on the descriptions of Plaintiff's past relevant work and the

28

12

1  VE's testimony upon which to base his determination.  (Id.)

2        **2.    Applicable Law.**

3        At step four of the sequential evaluation process, a claimant must establish

4  that his severe impairment or impairments prevent him from doing past relevant

5  work.  Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).  The regulations

6  explain the step-four evaluation:

7        If we cannot make a decision based on your current work activity or on

8        medical facts alone, and you have a severe impairment(s), we then

9        review your residual functional capacity and the physical and mental

10       demands of the work you have done in the past.  If you can still do this

11       kind of work, we will find that you are not disabled.

12  20 C.F.R. §§ 404.1520(e), 416.920(e).  The claimant has the burden of showing

13  that he can no longer perform his past relevant work.  20 C.F.R. §§ 404.1520(e),

14  416.920(e); see also Clem v. Sullivan, 894 F.2d 328, 331-32 (9th Cir. 1990).

15  Although the burden of proof lies with the claimant, the ALJ still has a duty to

16  make requisite factual findings to support his conclusion as to whether plaintiff

17  can perform his past relevant work.  See Pinto, 249 F.3d at 844 (despite the fact

18  that the claimant has the burden at step four, "the ALJ is [not] in any way relieved

19  of his burden to make the appropriate findings to insure that the claimant really

20  can perform his or her past relevant work"); see also Henrie v. U.S. Dept. Of

21  Health & Human Serv., 13 F.3d 359 (10th Cir. 1993) (recognizing the tension

22  created between the mandate of SSR 82-62 and the claimant's burden of proof,

23  and finding that the ALJ's duty is one of inquiry and factual development while

24  the claimant continues to bear the ultimate burden of proving disability).

25        In order to determine whether a claimant has the RFC to perform his past

26  relevant work, the ALJ must evaluate the work demands of the past relevant work

27  and compare them to the claimant's present capacity.  Villa v. Heckler, 797 F.2d

28

1    794, 797-98 (9th Cir. 1986).  Social Security Ruling ("SSR")[8] 82-62 states that a

2    determination that a claimant has the capacity to perform a past relevant job must

3    contain among the findings the following specific findings of fact:  (1) a finding of

4    fact as to the claimant's RFC; (2) a finding of fact as to the physical and mental

5    demands of the past job or occupation; and (3) a finding of fact that the claimant's

6    RFC permits him to return to the past job or occupation.  See SSR 82-62; see also

7    Pinto, 249 F.3d at 844-45.

8         A finding that a claimant is able to return to his past relevant work must be

9    based on adequate documentation and a careful appraisal.  Dealmeida v. Bowen,

10   699 F. Supp. 806, 807 (N.D. Cal. 1988) ("Without the proper foundation as to

11   what plaintiff's past relevant work entailed, the ALJ's subsequent determination

12   that plaintiff retained the residual functional capacity to perform that job is not

13   supported by substantial evidence.").  This determination requires a careful

14   appraisal of the claimant's statements, the medical evidence, and, in some cases,

15   corroborative information such as the Dictionary of Occupational Titles ("DOT").

16   SSR 82-62.  Adequate documentation must be obtained to support the decision,

17   including "factual information about those work demands which have a bearing on

18   the medically established limitations." Id.  Thus, "[d]etailed information about . . .

19   mental demands and other job requirements must be obtained as appropriate." Id.;

20   see also Sivilay v. Apfel, 143 F.3d 1298, 1299 (9th Cir. 1998) (remanding to ALJ

21   to "investigate fully the demands of the applicant's past work and compare them to

22   the applicant's residual mental and physical capabilities").  Any determination

23   regarding a claimant's ability to perform past work "must be developed and

24

25        [8]  Social Security Rulings are issued by the Commissioner to clarify the
26   Commissioner's regulations and policies.  Bunnell v. Sullivan, 947 F.2d 341, 346
     n.3 (9th Cir. 1991).  Although they do not have the force of law, they are
27   nevertheless given deference "unless they are plainly erroneous or inconsistent
     with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).
28

explained fully in the disability decision" and "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62.

**3.     Analysis.**

In this case, the ALJ satisfied the first and second requirements above in that he made sufficiently specific findings of fact regarding Plaintiff's RFC, and a finding as to the physical and mental demands of Plaintiff's past relevant work. The ALJ, however, failed to make the requisite findings of fact that Plaintiff's RFC permits her to perform her past relevant work as actually performed. See SSR 82-62; see also Pinto, 249 F.3d at 844-45.

In support of his conclusion that Plaintiff is capable of performing her past relevant work as a sales clerk and receptionist, the ALJ stated that he relied upon the testimony of the VE that an individual with the same vocational factors and RFC as Plaintiff could perform work as a sales clerk and receptionist.  (AR at 23.) However, the VE only provided testimony that Plaintiff could perform any of her past jobs, including sales clerk or receptionist, as they are typically performed. (Id. at 98.)  Thus, the ALJ erred in determining that Plaintiff can perform her past relevant work, as it was actually performed.

Despite this error in determining Plaintiff could perform work as it was actually performed, any error committed by the ALJ was harmless because the ALJ still properly identified past relevant work, as it is typically performed, that Plaintiff could perform.  (Id. at 23, 98); see also Curry, 925 F.2d at 1131; SSR 82-62 ("The RFC to meet the physical and mental demands of a job a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.'").

To the extent that Plaintiff argues that her RFC somehow prevents her from

15

1  performing her past relevant work as it is typically performed, a contention that

2  the Court finds is not supported by the record, the ALJ's non-disability finding

3  would still be affirmed.  While the ALJ does not provide other types of substantial

4  gainful work existing in the national economy, the ALJ asked the VE at the

5  hearing to identify other jobs that Plaintiff can still perform, considering her RFC,

6  age, education and work experience.  (AR at 99.)  The VE testified that Plaintiff

7  could perform the following work:  (i) office helper, with 8,00 positions regionally

8  and 160,000 nationally; (ii) inspector and packager, with 6,000 positions

9  regionally and 119,000 nationally; (iii) day worker, with 7,000 positions

10  regionally and 100,000 nationally; and (iv) kitchen helper, with 3,000 positions

11  regionally and 100,000 nationally.  (Id.)  The VE testified that the proposed

12  positions are consistent with the DOT.  (Id.)  Thus, even if Plaintiff argues that her

13  RFC prevents her from performing her past relevant work as it is typically

14  performed, the VE still identified substantial gainful work existing the national

15  economy that Plaintiff could perform.

16       Based on the foregoing, the Court finds that while the ALJ erred in

17  determining that Plaintiff could perform her past relevant work as it is actually

18  performed, the ALJ still properly determined that Plaintiff could perform her past

19  relevant work as it is typically performed.  Moreover, any error was harmless, as

20  the VE identified other types of substantial, gainful work existing in the national

21  economy to support the finding of non-disability.  Curry, 925 F.2d at 1131.

22  **E.   Remand Is Warranted Due to the ALJ's Failure to Discuss Lay Witness**

23       **Testimony.**

24       Plaintiff contends the ALJ failed to provide germane reasons for rejecting

25  the testimony of the lay witness, Jennifer Rubio.  (JS at 18-19.)

26       **1.    Applicable Law.**

27  Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to

28

16

medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [her] ability to work."  Further, the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  This applies equally to the sworn hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), as well as to unsworn statements and letters of friends and relatives. See Schneider v. Comm'r, Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000).  If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment. Nguyen, 100 F.3d at 1467.  When rejecting lay witness testimony, the ALJ must provide "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ is not relieved of his obligation to comment upon lay witness testimony simply because he has properly discredited the plaintiff's testimony.  To find otherwise would be based upon "the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms." Id.  The ALJ's failure to address the witness' testimony generally is not harmless.  Curry, 925 F.2d at 1131.  In failing to address a lay witness' statement, the error is harmless only if "a reviewing court . . . can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).

**2.    Background.**

On April 25, 2005, Plaintiff's sister, Ms. Rubio, completed a "Function Report Adult Third Party" form.  (AR at 616-25.)  In the form, Ms. Rubio reported

1   that Plaintiff spends her days not doing anything, crying off and on, appearing

2   restless and anxious, and watches a little television. (Id. at 616.) She also

3   reported that Plaintiff has trouble standing, cooking, and completing yard work

4   due to her leg cramps. (Id. at 618-19.) Plaintiff is unable to go out alone due to

5   anxiety, fear, and paranoia. (Id. at 619.) Ms. Rubio stated that Plaintiff's social

6   interaction has been severely limited due to her anxiety and depression. (Id. at

7   620-21.) As to her physical abilities, Ms. Rubio repeatedly indicated that, inter

8   alia, Plaintiff is limited by her leg cramping, asthma, migraines, and inability to

9   sleep. (Id. at 621.) She also indicated that Plaintiff has difficulty completing

10  tasks, concentrating, understanding directions, following instructions, and getting

11  along with others. (Id.) Ms. Rubio also stated that Plaintiff feels worthless and

12  helpless, and has suicidal thoughts. (AR at 623-24.)

13          At the hearing, Ms. Rubio testified further about Plaintiff's daily activities

14  and limitations. (Id. at 94-97.) She testified that due to Plaintiff's cellulitis,

15  Plaintiff has severe leg pain and cramps if she sits or walks for a long time. (Id. at

16  94, 97.) She reiterated the fact that Plaintiff is suicidal and is regularly seeing a

17  doctor weekly for her mental and physical impairments. (Id.). She indicated that

18  Plaintiff has a poor memory, especially short-term memory. (AR at 95.) Finally,

19  Ms. Rubio testified that she helps Plaintiff bathe and get ready. (Id. at 97.)

20                    **3.    Analysis.**

21          Here, the ALJ's decision made no reference to Ms. Rubio's written

22  statement or testimony. As stated above, the ALJ is not relieved of his obligation

23  to comment upon lay witness testimony simply because he has properly, as is the

24  case here, discredited the Plaintiff's testimony. Dodrill, 12 F.3d at 919.

25          The Commissioner purports to rely in part on Vincent v. Heckler, 739 F.2d

26  1393 (9th Cir. 1984), for the proposition that because the testimony conflicted

27  with the available medical evidence, it was not error for the ALJ to disregard the

28

                                        18

1  witness' testimony without giving specific reasons for doing so.  (JS at 20.)

2  However, the Ninth Circuit found in a subsequent decision that the

3  Commissioner's reliance on <u>Vincent</u> for that proposition was misplaced.  <u>Nguyen</u>,

4  100 F.3d at 1467.  The <u>Nguyen</u> court distinguished <u>Vincent</u> on the basis that the

5  lay witnesses in <u>Vincent</u> "were making medical diagnoses, e.g., that the claimant

6  had a serious mental impairment as a result of a stroke," and that "[s]uch medical

7  diagnoses are beyond the competence of lay witnesses and therefore do not

8  constitute competent evidence."  <u>Id.</u> at 1467.  The <u>Nguyen</u> court held that "lay

9  witness testimony as to a claimant's symptoms or how an impairment affects

10  ability to work is competent evidence," and "therefore cannot be disregarded

11  without comment."  <u>Id.</u> (citing <u>Dodrill</u>, 12 F.3d at 919.)  More recently, in <u>Stout</u>,

12  454 F.3d at 1053, the Ninth Circuit reaffirmed the <u>Nguyen</u> holding.

13  The Commissioner improperly contends that Ms. Rubio's statements and

14  testimony fail to contradict the ALJ's RFC assessment.  (JS at 20.)  The Court

15  disagrees with this contention.  Ms. Rubio's statements and testimony, if found to

16  be credible, indicate a need for greater physical and mental limitations than

17  currently assessed in the ALJ's RFC assessment.  (AR at 19.)

18  Finally, the Commissioner argues that if the ALJ erred in failing to properly

19  reject Ms. Rubio's statements, no reasonable ALJ would have reached a different

20  decision based on the record, making any error harmless.  (JS at 20.)  The Court

21  finds that the ALJ's failure to address the witness' testimony is not harmless.

22  While conflicts in the evidence may be valid reasons for discounting the

23  credibility of lay witness testimony (<u>see e.g.</u>, <u>Lewis v. Apfel</u>, 236 F.3d 503, 511-12

24  (9th Cir. 2001); <u>compare</u> <u>Nguyen</u>, 100 F.3d at 1467)), this reasoning is

25  after-the-fact reasoning not articulated by the ALJ, and the Court is "constrained

26  to review the reasons the ALJ asserts."  <u>Stout</u>, 454 F.3d at 1054; <u>see also</u> <u>Connett</u>

27  <u>v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003) (citing <u>Sec. & Exch. Comm'n v.</u>

28

19

1   Chenery Corp., 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)); Pinto,

2   249 F.3d at 847-48.  Here, the ALJ asserted no reason for rejecting the subject

3   testimony.

4        If determined to be credible, the lay witness' testimony potentially bolsters

5   Plaintiff's testimony and, consequently, potentially bolsters her credibility.  As a

6   result, the Court cannot say with respect to Ms. Rubio's testimony that if this

7   testimony was fully credited, "no reasonable ALJ" could have reached a different

8   disability determination.  See Robbins, 466 F.3d at 885.  Accordingly, remand is

9   warranted for further development of the record with regard to lay witness

10  testimony.

11  **F.     The ALJ Posed a Complete Hypothetical to the VE.**

12       Plaintiff also claims that the ALJ erred by posing an incomplete

13  hypothetical to the VE , by excluding mental limitations assessed by Dr. Casciari

14  and the alleged medication side effects.  (JS at 21-22.)  The Court disagrees.

15       "In order for the testimony of a VE to be considered reliable, the

16  hypothetical posed must include 'all of the claimant's functional limitations, both

17  physical and mental' supported by the record."  Thomas, 278 F.3d at 956 (quoting

18  Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)).  Hypothetical questions

19  posed to a VE need not include all alleged limitations, but rather only those

20  limitations which the ALJ finds to exist.  See, e.g., Magallanes v. Bowen, 881 F.2d

21  747, 756-57 (9th Cir. 2001); Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir.

22  1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986).  As a result, an

23  ALJ must propose a hypothetical that is based on medical assumptions, supported

24  by substantial evidence in the record, that reflects the claimant's limitations.

25  Osenbrock, 240 F.3d at 1163-64 (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th

26  Cir. 1995)); see also Andrews, 53 F.3d at 1043 (although the hypothetical may be

27  based on evidence which is disputed, the assumptions in the hypothetical must be

28

1  supported by the record).

2      Here, as stated above, the ALJ was not required to consider the opinion of

3  Dr. Casciari, but implicitly rejected the opinion regardless. See supra, Discussion

4  Part III.A. Additionally, there is no objective medical evidence to support

5  Plaintiff's contention of disabling side effects from medications. Id. at Part III.C.

6  Accordingly, there was no error in the ALJ's hypothetical questions to the VE

7  which did not include Dr. Casciari's limitations or medication side effects. Rollins

8  v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of

9  the limitations that he found to exist, and because his findings were supported by

10 substantial evidence, the ALJ did not err in omitting the other limitations that

11 Rollins had claimed, but had failed to prove.").

12 **G.   This Case Should Be Remanded for Further Administrative**

13 **     Proceedings.**

14     The law is well established that remand for further proceedings is

15 appropriate where additional proceedings could remedy defects in the

16 Commissioner's decision. Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

17 Remand for payment of benefits is appropriate where no useful purpose would be

18 served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525,

19 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v.

20 Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would

21 unnecessarily delay the receipt of benefits. Bilby v. Schweiker, 762 F.2d 716, 719

22 (9th Cir. 1985). Here, the Court concludes that further administrative proceedings

23 would serve a useful purpose and remedy the administrative defects discussed

24 herein.

25 / / /

26 / / /

27 / / /

28

21

1

**IV.**

2

**ORDER**

3       Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY

4    ORDERED THAT Judgment be entered reversing the decision of the

5    Commissioner of Social Security and remanding this matter for further

6    administrative proceedings consistent with this Memorandum Opinion.

7

8    Dated: December 11,  2009

_____

9                                 HONORABLE OSWALD PARADA
United States Magistrate Judge

22